**SIGNED THIS: July 30, 2012**

_____
**Thomas L. Perkins
United States Chief Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| BILL I. ROWAND and ) | Case No. 11-81717 |
| WENDY S. ROWAND, ) | |
| Debtors. ) | |

**O P I N I O N**

The Debtors, Bill and Wendy Rowand (individually "BILL" and "WENDY," together the "DEBTORS"), filed a voluntary chapter 7 petition on June 30, 2011. Gary T. Rafool (TRUSTEE) is serving as the case trustee and has moved for an order designating him as beneficiary of two trusts in place of WENDY. The main issue to be decided is whether WENDY'S interest as a beneficiary under two trusts created by her parents is property of her bankruptcy estate.

WENDY'S father, John L. Greenwood, died in 2000, while her mother, Dorothy M. Greenwood, died October 27, 2011, 119 days after the bankruptcy filing. In addition to WENDY, John and Dorothy are survived by two other adult children, John T. Greenwood and Nancy A. Nilsson.

John L. and Dorothy M. Greenwood executed separate, but substantially reciprocal, trust agreements on April 10, 1998, each transferring certain scheduled property to themselves as trustee. Each trust is revocable, containing an identical provision enabling the settlor-trustee, but no one else, to amend or revoke the agreement in whole or in part. John's Trust, provides alternative dispositions of the trust assets, depending upon whether his wife outlives him. In the event of her survival, John's Trust calls for the creation of a separate trust for Dorothy's benefit designated as the "Marital Trust," funded by a portion of his trust assets. The balance of his trust estate is to be used to fund a separate trust designated as the "Family Trust," for the benefit of the three children. John's Trust provides that, upon his death, Dorothy M. Greenwood and the Central Trust and Savings Bank, Geneseo, Illinois, shall be his successor trustees, to serve jointly as co-trustees.

John's Trust provides that Dorothy is to receive the income from the Family Trust during her lifetime, but that the trustee of the Family Trust has the discretion to pay less than all of the income to Dorothy, and may pay the excess to any or all of the three children, or may add the undistributed excess income to the principal. The Family Trust trustee is also given the discretion to pay to Dorothy "such sums from principal as the trustee deems necessary or advisable from time to time for her health and maintenance in reasonable comfort, considering her income from all sources known to the trustee, but shall make no invasion of the Family Trust so long as any readily marketable assets remain in the Marital Trust."

John's Trust provides that upon Dorothy's death, subject to a power of appointment and to the payment of certain taxes, the remaining assets in the Marital Trust shall be added to the Family Trust. It further provides that upon Dorothy's death, the Family Trust is to be divided into equal shares, one for each child to be held as a separate trust, with respect to which it then provides:

> SECTION 4: After division of the Family Trust into shares, the child may withdraw any part or all of the principal of his or her share at any time or times. The

2

>    trustee shall make payment without question upon the child's written request. The right of withdrawal shall be a privilege which may be exercised only voluntarily and shall not include an involuntary exercise.

John's Trust also contains several general provisions that apply to each trust created under it, including the following:

>    The interests of beneficiaries in principal or income shall not be subject to the claims of any creditor, any spouse for alimony or support, or others, or to legal process, and may not be voluntarily or involuntarily alienated or encumbered. This provision shall not limit the exercise of any power of appointment.
>
>    The rights of beneficiaries to withdraw trust property are personal and may not be exercised by a legal representative, attorney in fact or others.
>
> (part Seventh, section 2).

The terms of Dorothy's Trust, which was also formed as a revocable trust, substantially mirror the terms of John's Trust.

## ANALYSIS

**A. General Principles.**

The bankruptcy estate that is created upon commencement of a case is defined in 11 U.S.C. § 541. Whether a property interest of a debtor is "property of the estate" is a federal question to be decided as a matter of federal law. *Matter of Yonikus,* 996 F.2d 866, 869 (7th Cir. 1993). But state law determines whether and to what extent the debtor has any legal or equitable interest in property as of the commencement of the case. *Id.; Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

The scope of the estate is extremely broad, capturing all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). It also includes certain property interests that the debtor acquires or becomes entitled to acquire within 180 days

after commencement of the case "by bequest, devise, or inheritance." 11 U.S.C. § 541 (a)(5)(A). This post-filing acquisition provision is, by definition, applicable only when the debtor does not have any interest in the property as of the commencement of the case, since the property would have already become part of the estate under section 541(a)(1). *See In re Hall*, 441 B.R. 680, 691 (10th Cir.BAP 2009); *In re Holter,* 401 B.R. 372, 376 (Bankr.W.D.Wis. 2009); *In re Taylor,* 2006 WL 1275400 (Bankr.C.D.Ill. 2006) (Fines, J.); *In re Goldberg,* 98 B.R. 353, 357-58 (Bankr.N.D.Ill. 1989).

Despite its breadth, section 541 contains several exclusions from property of the estate. A debtor's interest as a beneficiary of a spendthrift trust is excluded by section 541(c)(2), which provides as follows:

> A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

This provision embodies a Congressional policy choice to exclude spendthrift trusts from a debtor's estate. *Yonikus,* 996 F.2d at 870.

Property of the estate encompasses conditional, future, speculative and equitable interests that the debtor may be entitled to. *U.S. ex rel. Gebert v. Transport Administrative Services,* 260 F.3d 909, 913 (8th Cir. 2001). A debtor's beneficial interest in a trust that does not contain an enforceable restriction on transfer is, generally, property of the estate, even if the debtor has no present rights and his future rights are conditional, since property of the estate includes contingent interests in future income or distributions. *See In re Neuton,* 922 F.2d 1379, 1382-83 (9th Cir. 1990) (collecting cases); *In re Prochnow,* 467 B.R. 656, 663 (C.D.Ill. 2012); *Taylor, supra,* (debtor's interest in *inter vivos* trust is property of the estate and the fact that she is not eligible to receive any distribution until one year after the death of her aunt does not defeat the bankruptcy estate's interest

4

in the trust); *In re Knight,* 164 B.R. 372 (Bankr.S.D.Fla. 1994) (debtor's contingent one-half interest in *corpus* of the trust of which his mother was life beneficiary was property of the estate, though debtor could be divested of his interest if he predeceased his mother, and though principal could be invaded during mother's life in order to provide for her needs). Unless a valid spendthrift provision excludes the trust interest under section 541(c)(2), the entire interest and every right of the debtor under the trust becomes property of the estate. *In re Potter,* 228 B.R. 422, 424 (8th Cir.BAP 1999). Even if the trust agreement contains a spendthrift provision, it must be valid and enforceable at the time of the bankruptcy filing in order for the trust interest to be excluded. *In re Hilgers,* 371 B.R. 465, 468 (10th Cir.BAP 2007), *aff'd*, 279 Fed.Appx. 662 (10th Cir. 2008); *In re Fetter,* 354 B.R. 242, 245-46 (Bankr.C.D.Ill. 2006)(Gorman, J.).

**B.  The Trusts are Valid *Inter Vivos* Trusts; Beneficiaries Obtained Property Interest upon Execution.**

The TRUSTEE questions whether the trusts are testamentary in character and, as such, not valid *inter vivos* trusts under Illinois law. Illinois courts have a long history with this issue, most often raised by heirs unhappy with the disposition of trust assets who challenge the validity of an *inter vivos* trust on the basis that it is a testamentary document that is invalid for failing to comply with the execution requirement applicable to wills. *See First Nat. Bank of Joliet v. Hampson,* 88 Ill.App.3d 1057, 410 N.E.2d 1109 (Ill.App. 3 Dist. 1980); *Merchants Nat. Bank of Aurora v. Weinold,* 12 Ill.App.2d 209, 138 N.E.2d 840 (Ill.App. 2 Dist. 1956). The Illinois Supreme Court issued a definitive opinion on the issue fifty-seven years ago in *Farkas v. Williams,* 5 Ill.2d 417, 125 N.E.2d 600 (1955), reversing the lower court's ruling that four *inter vivos* trust declarations not executed with the formalities of a will were invalid testamentary dispositions.

The four trusts were created by Albert Farkas for the purpose of transferring, upon his death, certain shares of stock to his employee, Richard Williams. After Farkas's death, the administrators

5

of his estate filed suit for a declaratory judgment that the trusts were testamentary and invalid. The trusts were self-settled in that Farkas was both the settlor and the trustee. Farkas reserved the absolute right to change the beneficiary and to revoke the trusts entirely, in which event ownership of the stock would revert to him in his individual capacity. During his lifetime, all dividends were to be paid to Farkas. He reserved the right to sell the stock and retain the proceeds, thus terminating the trust as to the stock sold. The trust declarations further provided that upon Farkas's death, the title to the stock and the right to any subsequent distributions "shall be vested absolutely in the beneficiary." The court identified and addressed two issues:

(1)     whether upon execution of the trust declarations Williams acquired an interest in the stock;

(2)     whether Farkas, as settlor-trustee, retained such control over the stock as to render the declarations invalid as attempted testamentary dispositions.

The administrators argued that while Farkas survived, the interest of Williams was a mere expectancy, no different than that of a legatee under a will. *See In re Estate of Henry,* 396 Ill.App.3d 88, 95, 919 N.E.2d 33, 39-40 (Ill.App. 1 Dist. 2009) (a will has no legal effect and confers no rights upon a legatee until the death of the testator). The court reasoned that Farkas's execution of the trust declarations did have the intended legal effect of giving Williams a present interest in the stock. Upon execution of the instruments, Farkas could not deal with the stock the same as if he owned the property absolutely, but only in accordance with the terms of the trusts. *Farkas v. Williams,* 5 Ill.2d at 422. By assuming to act as trustee, he is held to have intended to take on those obligations which are expressly set out in the trust declarations, as well as those fiduciary obligations implied by law. *Id.* The court emphasized that those contractual and fiduciary obligations, arising upon execution, were for the benefit of Williams as named beneficiary. *Id.* The court determined that Williams acquired an immediate interest upon execution of the trust declarations notwithstanding that his interest was subject to various contingencies. The court concluded that the "disposition is not

6

testamentary and the intended trust is valid, even though the interest of the beneficiary is contingent upon the existence of a certain state of facts at the time of the settlor's death." *Id.* at 423 (*citing* Restatement of the Law of Trusts, section 56, comment f).

The administrators argued that since Farkas retained a life interest and the power to revoke, he retained complete control and dominion over the securities for his own benefit during his lifetime so that he could deal with the property as he liked so long as he lived. Acknowledging that it had not previously had occasion to address the validity of trust instruments where the settlor retained a life interest and the power to revoke, plus other extensive powers, the court recognized that its previous decisions "exhibit a tendency upon the part of this court to permit a settlor to retain considerable power over the trust property." *Id.* at 428. The court determined that the amount of control Farkas retained over the stock was not enough to invalidate the trusts as attempted testamentary dispositions, noting that it is "well established" that retention by a settlor of the power to revoke, even when reserving a life interest in the trust property, does not render the trust inoperative for want of execution as a will. *Id.* at 424. The court dispelled the concern that Farkas was both settlor and trustee, reasoning that "the power of control which the settlor has as trustee is not an irresponsible power and can be exercised only in accordance with the terms of the trust." *Id.* at 426.

The court reconciled the seeming conflict between the "absolute control" that a reserved power of revocation gives the settlor, *Id.* at 431, and the present interest of the beneficiary, by noting first that the policy of the law favors early vesting of interests and construing contingencies as conditions subsequent rather than precedent, including reservations in trust instruments which may operate to defeat the interest of beneficiaries but which, unexercised, do not prevent the vesting of equitable title. *Id.* at 429-30 (*citing United Bldg. & Loan Ass'n. v. Garrett,* 64 F.Supp. 460, 461 (W.D.Ark. 1946)). So long as the trust continues, the beneficiaries are considered to have a vested

7

equitable interest, subject to divestment, and not the lack of any interest at all. *Id.* at 431 (*citing* 1 Bogert, Trusts and Trustees, section 104). Having determined that the beneficiary of a self-settled, revocable, *inter vivos* trust acquires a vested equitable interest upon execution, the court held that the declarations executed by Farkas were valid *inter vivos* trusts and were not attempted testamentary dispositions.

*Farkas v. Williams* has withstood the test of time and remains the law of the land in Illinois. *See In re Petralia's Estate,* 32 Ill.2d 134, 204 N.E.2d 1 (1965); *Montgomery v. Michaels,* 54 Ill.2d 532, 534, 301 N.E.2d 465 (1973); *Johnson v. La Grange State Bank,* 73 Ill.2d 342, 356, 383 N.E.2d 185 (1978); *In re Estate of Michalak,* 404 Ill.App.3d 75, 83, 934 N.E.2d 697 (Ill.App. 1 Dist. 2010) (principal distinction between a will and an *inter vivos* trust is under a will, the legatee has no interest until the death of the testator, while under the trust, the beneficiary has an interest the moment the trust is created, despite the fact that the beneficiary's actual enjoyment of the trust *res* is contingent upon the settlor's death); *First Nat. Bank of Joliet v. Hampson, supra.*

Federal courts applying Illinois law adhere to the principles established in *Farkas v. Williams. Scanlan v. Eisenberg,* 669 F.3d 838 (7th Cir. 2012); *In re Taylor,* 2006 WL 1275400 (Bankr.C.D.Ill. 2006) (Fines, J.). *C.f., In re Neuton,* 922 F.2d 1379, 1382 (9th Cir. 1990) (contingent remainder interests under *inter vivos* trusts "typically have been held to be property of the bankruptcy estate); *In re Smith,* 189 B.R. 8 (N.D.Ill. 1995) (where under Wisconsin law, contingent beneficial interest under trust was transferable, it became property of the estate); *In re Fetter, supra,* (Gorman, J.) (declining to decide issue under section 541(a)(1) where trust contained spendthrift provision so that contingent beneficial interest was excluded via section 541(c)(2)).

When the principles established in *Farkas v. Williams* are applied here, two important conclusions are compelled. First, the trusts are valid *inter vivos* trusts enforceable according to their

8

terms. Despite their revocability and retention of control by the settlors, substantially similar to the Farkas trusts, John's Trust and Dorothy's Trust are not the kind of testamentary instruments that, under Illinois law, must be executed as wills to be valid. Second, when her parents executed the trust agreements in 1998, with completed schedules of trust property attached, WENDY obtained an immediate property interest as a beneficiary notwithstanding that the trusts were revocable by the settlors and that her interest was a future one subject to various contingencies.[1] Thus, she had a beneficial interest that presumptively became property of her bankruptcy estate by operation of section 541(a)(1), subject to the possibility of exclusion from the estate by operation of section 541(c)(2), discussed below.[2]

**C. The Spendthrift Restrictions were Valid and Enforceable on the Petition Date.**

Under section 541(c)(2), a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a bankruptcy case. 11 U.S.C. § 541(c)(2). There is no doubt that this provision was intended to preserve the protection from creditors afforded spendthrift trusts under state law. *Matter of Newman,* 903 F.2d 1150, 1152 n.2 (7th Cir. 1990). If state law prevents a creditor from reaching certain income payable at a future date, then the Bankruptcy Code similarly will treat that income as outside the bankruptcy estate and unreachable by creditors. *Morter v. Farm Credit Services,* 937 F.2d 354, 356 (7th Cir. 1991).

Spendthrift trusts are valid in Illinois. *Geiger v. Geer,* 395 Ill. 367, 69 N.E.2d 848 (1946). The purpose of spendthrift trusts is to provide a fund for the support of another while protecting the

---

[1] *Citing Farkas v. Williams,* the DEBTORS admit that WENDY obtained "a very real and vested interest in the trusts . . . on the date each was made." Debtors Reply Brief (Doc. 84), p. 10.

[2] Since section 541(a)(5) does not apply to property brought into the estate under section 541(a)(1), that provision merits no further discussion here. *See In re Holter,* 401 B.R. 372, 376 (Bankr.W.D.Wis. 2009).

fund against the beneficiary's incapacity or financial imprudence. *In re Di Piazza,* 29 B.R. 916, 918-19 (Bankr.N.D.Ill. 1983). To qualify as a spendthrift trust, the trust, by its terms, must restrict the beneficiary from accessing or voluntarily alienating the trust assets and must preclude the beneficiary's creditors from reaching the assets by execution, levy, garnishment or otherwise. *Geiger v. Geer,* 395 Ill. at 376 (directions against alienation by the voluntary act of the beneficiary or through legal process by creditors are the "usual incidents" of spendthrift trusts). Of particular importance, the beneficiary must not possess exclusive and effective control over distribution of the assets or termination of the trust. *In re Silldorf,* 96 B.R. 859, 864 (C.D.Ill. 1989) (Mihm, J.); *In re Balay,* 113 B.R. 429, 437 (Bankr.N.D.Ill. 1990).

It is well-settled that a beneficiary's right to access trust property overrides and nullifies the protective effect of an otherwise enforceable spendthrift provision.[3] *In re Marriage of Sharp,* 369 Ill.App.3d 271, 281, 860 N.E.2d 539 (Ill.App. 2 Dist. 2006); *Lunkes v. Gecker,* 427 B.R. 425, 431 (N.D.Ill. 2010); *In re Hawley,* 2004 WL 330098 (Bankr.C.D.Ill. 2004); *In re McCoy,* 274 B.R. 751 (Bankr.N.D.Ill. 2002), *aff'd,* 2002 WL 1611588 (N.D.Ill. 2002); *In re Groves,* 120 B.R. 956, 960-61 (Bankr.N.D.Ill. 1990); *Matter of Rolfe,* 34 B.R. 159 (Bankr.N.D.Ill. 1983). The Court of Appeals for the Seventh Circuit has recognized this principle as a matter of Illinois law. *Matter of Perkins,* 902 F.2d 1254, 1257 n.2 (7th Cir. 1990) (degree of control that beneficiary has over trust *corpus* is the principal consideration under Illinois law); *Matter of Newman,* 903 F.2d 1150, 1153 (7th Cir. 1990) (protection of spendthrift provision would be lost if debtor-beneficiary filed bankruptcy after age at which he became entitled to receive trust *corpus*). Once it is determined that a debtor-beneficiary's interest is not excluded by section 541(c)(2), every right and interest of the debtor in the trust assets,

---

[3] "If the beneficiary is entitled to have the principal conveyed to him immediately, a restraint on the voluntary or involuntary transfer of his interest in the principal is invalid." Restatement (Second) of Trusts § 153(2).

10

and the full value of the debtor's interest in those assets, becomes property of the estate. *In re Smith,* 189 B.R. 8 (N.D.Ill. 1995); *In re Potter,* 228 B.R. 422 (8th Cir.BAP 1999).

The TRUSTEE does not dispute that each trust contains a spendthrift provision that protects WENDY'S interest from her creditors, and that constitutes a "restriction on the transfer of a beneficial interest of the debtor in a trust" as that phrase is used in section 541(c)(2). The TRUSTEE'S sole argument is that the restriction on transfer became ineffective when WENDY became entitled to receive the trust property upon demand.

According to the terms of the trusts, each child was given the absolute right to withdraw any part or all of the principal of his or her share, but only after division of the Family Trust into shares (part Sixth, section 4), which division was to occur only upon the death of the last to survive between John and Dorothy. Dorothy was alive when WENDY filed her petition, so WENDY'S absolute right of withdrawal was not yet effective on that date. While Dorothy survived, the only basis for any distribution to WENDY was under part Sixth, section 1 of John's Trust.[4] That section gives the trustee the discretion to pay excess income from the Family Trust to one or more of the children, "according to their respective needs and best interests, or accumulate the same and add it to principal as the trustee deems advisable." This potential for WENDY to receive income from the Family Trust if there was an excess beyond that needed to provide for Dorothy and if the trustee, in the exercise of discretion, deemed it advisable, does not rise to the level of a right or power of WENDY to obtain or control the disposition of the trust property.

The TRUSTEE contends that he steps into WENDY'S shoes and may now demand her full share from the trustee since Dorothy has died. It is clear, however, that WENDY'S rights, and the enforceability of a spendthrift provision, are to be determined as of the petition date. *See Matter of*

---

[4] So long as Dorothy was alive, her children had no distributional interest whatsoever under her trust, either absolute or discretionary.

11

*Newman,* 903 F.2d 1150 (7th Cir. 1990). When she filed her bankruptcy case, WENDY had no present right to the assets or income of either trust. The spendthrift provision of each trust was valid and enforceable as of the petition date. Her interest as a beneficiary was, therefore, excluded from property of the estate by operation of section 541(c)(2).

**D**. **No Bequest, Devise or Inheritance.**

Alternatively, the TRUSTEE relies upon the fact of Dorothy's death within 180 days of the bankruptcy filing as an acquisition by bequest, devise or inheritance free and clear of the spendthrift protection. It is not clear whether Congress intended the exclusionary effect of section 541(c)(2), determined as of the petition date, to preclude any subsequent application of section 541(a)(5) based upon postpetition events.[5] *See In re Weiser,* 2011 WL 1637945 (Bankr.S.D.Ind. 2011) (identifying the issue as whether a distribution from a spendthrift trust, "once made, loses its § 541(c)(2) protection, and becomes a "bequest, devise or inheritance" which is property of the estate under § 541(a)(5)(A)"). Even if section 541(a)(5) is operative, however, it does not provide the TRUSTEE the relief he seeks here.

As recognized by the Seventh Circuit, property received as a beneficiary of an *inter vivos* trust does not fit within the generally accepted meaning of a "bequest, devise, or inheritance" as specified in section 541(a)(5). *Newman,* 903 F.2d at 1154 (applying Missouri law). Courts consistently adhere to the literal construction of section 541(a)(5) as not including *inter vivos* trust distributions or entitlements arising postpetition, at least to the extent that the trusts were not testamentary. *Weiser, supra: In re Blount,* 438 B.R. 98 (Bankr.E.D.Tex. 2010); *In re Eley,* 331 B.R.

---

[5] One interpretation that would reconcile the potential conflict is to construe the provisions to mean that property of the estate includes an interest acquired within 180 days by bequest, devise or inheritance *unless* the interest was subject to a valid spendthrift clause enforceable on the petition date. Arguably, section 541(c)(2) is the more specific or narrowly targeted provision as compared to section 541(a)(5). A well established canon of statutory construction is that the specific governs the general. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank,* 132 S.Ct. 2065, 2070-71 (2012).

12

353 (Bankr.S.D.Ohio 2005); *In re Cook,* 2008 WL 8444785 (9th Cir.BAP 2008); *In re Rogove,* 443 B.R. 182 (Bankr.S.D.Fla. 2010); *In re Katusky,* 372 B.R. 910 (Bankr.D.Minn. 2007); *In re Roth,* 289 B.R. 161 (Bankr.D.Kan. 2003). *Contra, Matter of Moody,* 837 F.2d 719 (5th Cir. 1988).

To this Court's knowledge, the only published decision on this issue by a court applying Illinois law is Bankruptcy Judge Gorman's decision in *Fetter*. Following the majority rule, Judge Gorman held that where the debtor's entitlements arose upon the settlor's death, which occurred postpetition, his interest as a beneficiary under an *inter vivos* spendthrift trust was not acquired by "bequest, devise, or inheritance," and was not property of the estate. This Court agrees with Judge Gorman.

The TRUSTEE cites no authority to support the argument that a beneficial interest under a non-testamentary *inter vivos* trust is considered to pass by "bequest, devise, or inheritance" as a matter of Illinois law. Under the Illinois Probate Act, "will" is defined to include testament and codicil. 755 ILCS 5/1-2.18. "Legacy" means a testamentary disposition of real or personal property and includes devise and bequest. 755 ILCS 5/1-2.12. "Bequeath" means to dispose of real or personal property by will and includes devise. 755 ILCS 5/1-2.04. These definitions support the conclusion that the terms "bequest" and "devise" are used with respect to wills, but not trusts. Illinois courts have defined "bequest" to mean any gift by will, while "devise" more narrowly refers to a gift of real estate as distinguished from personalty. *Schoendienst v. Fink,* 58 Ill.App.2d 203, 210, 207 N.E.2d 325 (Ill.App. 5 Dist. 1965); *Rickman v. Meier,* 213 Ill. 507, 520-21, 72 N.E. 1121 (1904).

The less technical term "inheritance" is also used with respect to testamentary instruments and not generally in reference to non-testamentary trust agreements. *See Altenheim German Home v. Bank of America, N.A.,* 376 Ill.App.3d 26, 38-39, 875 N.E.2d 1172 (Ill.App. 2 Dist. 2007);

*Robinson v. First State Bank of Monticello,* 104 Ill.App.3d 758, 764, 433 N.E.2d 285 (Ill.App. 4 Dist. 1982). It has been held in one statutory context, however, that the legislature used the term "inheritance" in a narrow fashion to mean an acquisition via the laws of intestacy. *Faville v. Burns,* 2011 IL App (1st) 110335, 960 N.E.2d 99, 106 (Ill.App. 1 Dist. 2011). Some Illinois courts have, in passing, used the words inherit and inheritance to refer to a gift conveyed through a trust. *People v. Allen,* 401 Ill.App.3d 840, 842-43, 929 N.E.2d 583 (Ill.App. 1 Dist. 2010); *Bank of America, N.A. v. Carpenter,* 401 Ill.App.3d 788, 794, 929 N.E.2d 570 (Ill.App. 1 Dist. 2010); *Lenz v. Lenz,* 33 Ill.App.3d 568, 572, 337 N.E.2d 195 (Ill.App. 2 Dist. 1975). Those references appear to be merely non-purposeful, vernacular usages, however, as they are not part of a holding or of reasoning or rationale in support of an adjudication.

While it may be possible that Congress used the word "inheritance" as a broad, all-encompassing term intended to establish a uniform federal rule to capture all property interests acquired on account of the death of another, there is no legislative history or caselaw to that effect.[6] This Court is aware of no authority to indicate that the Illinois legislature or Illinois courts have defined any of the terms "bequest," "devise" or "inheritance" to include an interest that passes to a beneficiary under a non-testamentary *inter vivos* trust. Accordingly, even if section 541(c)(2) does not preclude the application of section 541(a)(5), the death of her mother within 180 days after WENDY'S bankruptcy filing, triggering an unconditional right to receive a portion of the trust assets, was not by "bequest, devise, or inheritance" for purposes of section 541(a)(5). WENDY'S interest is not property of her bankruptcy estate.

Finally, the TRUSTEE contends that the DEBTORS failed to disclose WENDY'S beneficial interest, that this failure was knowing and intentional, and should have some consequence.

---

[6] Courts uniformly hold that "inheritance," like "bequest" and "devise," is to be defined by state law.

14

Whatever consequences might be appropriate, a judicial declaration that the trust assets, clearly excluded, are to be administered as assets of the estate, is not an option. The Court agrees with the TRUSTEE that the beneficial interest should have been disclosed on Schedule B, which requires disclosure of "all personal property of the debtor of whatever kind," without exception for property that the debtor believes or intends to argue is excluded from her estate. Obviously, a trustee must be made aware of any beneficial interest so that he can make his own evaluation as to whether it is included or excluded from the estate. At this stage, the DEBTORS have not offered any justification for the omission. If the TRUSTEE wishes to pursue the matter, he should file a motion seeking specific relief.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###